UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-61989-CIV-ZLOCH/ROSENBAUM

JOHN CALLAWAY, on behalf of himself
and all others similarly situated,

    Plaintiffs,

v.

PAPA JOHN'S USA, INC.,

    Defendant.
_____/

## ORDER

  This matter comes before the Court upon Defendant Papa John's USA, Inc.'s Motion to Compel Plaintiffs' Complete Discovery Responses [D.E. 49] and Defendant's Motion to Compel Responses to Defendant's Second Set of Discovery [D.E. 77], upon referral for disposition by the Honorable William J. Zloch. *See* D.E. 89. The Court has carefully reviewed both Motions, all filings in support thereof and in opposition thereto, and the record, and has conducted a hearing on the Motions on October 5, 2010. During the hearing, the Court announced its rulings with regard to Defendant's first Motion to Compel [D.E. 49] and with respect to Defendant's second Motion to Compel [D.E. 77] as it regarded Interrogatories No. 1 and 2, but deferred ruling on the requests for production that were the subject of Defendant's second Motion to Compel. This Order memorializes the Court's October 5, 2010, rulings and sets forth the Court's ruling on the remaining aspects of Defendant's second Motion to Compel. For the reasons indicated below, Defendant's Motion to Compel Complete Discovery Responses [D.E. 49] is granted, and Defendant's Motion to Compel

Responses to Defendant's Second Set of Discovery is granted in part and denied in part, as set forth below.

## Background

This matter arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiff John Callaway ("Callaway" or "Plaintiff") has worked for Defendant Papa John's USA, Inc. ("Defendant" or "Papa John's") as a pizza delivery driver since July 24, 2009. *See* D.E. 11, ¶ 8. He sues on behalf of himself and all of those similarly situated to him.

According to the Amended Complaint, when drivers are not delivering pizzas because they are waiting for them to be made or because of other circumstances, Papa John's assigns its drivers to perform in-store duties such as cleaning and maintaining the store. *Id.* at ¶ 18. Prior to July 24, 2009, the Amended Complaint asserts, Papa John's paid some of its drivers $6.00 per hour plus tips, even when the drivers were engaging in in-store duties, although the minimum wage for non-tipped employees at the time exceeded $6.00 per hour. *Id.* at ¶ 20. Beginning on July 24, 2009, the Amended Complaint continues, Papa John's instituted a new policy under which delivery drivers received two separate wages: $4.25 per hour plus tips when delivering pizzas, and $7.35 per hour while performing in-store duties. *Id.* at ¶ 19. Callaway alleges that under the new policy, store management "routinely" clocked out delivery drivers, changing their pay rates from $7.35 per hour to $4.25 per hour plus tips, while delivery drivers were still in the store performing in-store duties unrelated to their delivery responsibilities. *Id.* at ¶ 21.

During the course of discovery in this matter, Papa John's served Callaway and certain opt-in Plaintiffs in this matter with interrogatories and requests for production. *See* D.E. 49 at 2. Viewing Plaintiffs' responses as "incomplete and inadequate," Papa John's eventually filed its Motion to

Compel Plaintiffs' Complete Discovery Responses[1] [D.E. 49]. Prior to the October 5, 2010, hearing, however, the parties had resolved most of the disputes raised by this Motion to Compel. All that remained in controversy included Requests for Production 15 and 23.

Request for Production 15 sought "[a]ll documents regarding [Plaintiffs'] agreement to compensate [their] counsel for attorneys' fees related to this Action." D.E. 49 at 6. Although Plaintiffs conceded the relevancy of this information, as they seek attorneys' fees as part of their damages, they sought to delay production of responsive documents until after a ruling on the merits of the case. *See* D.E. 60 at 3-4. Relying on *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997), and *OFS, Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1366-67 (11th Cir. 2008), the Court, during the October 5th hearing, granted Papa John's Motion to Compel as it sought production of the records responsive to Request for Production 15.

Request for Production 23 sought income tax information for the years 2006 forward, along with supporting materials. *See* D.E. 49 at 6. Plaintiffs opposed this request, arguing that the information sought was not relevant and that Papa John's already possessed Plaintiffs' W-2 forms, anyway. D.E. 60 at 2-3. Citing out-of-circuit cases, Plaintiffs further argued that Papa John's had failed to satisfy the heightened requirement of demonstrating a "compelling need" for tax information. *See id.* at 2.

In the Eleventh Circuit, however, federal law does not require any demonstration beyond Rule 26(b) relevance to allow a party to obtain financial information, including tax records, through

---

[1] Papa John's further complained that Luiz Silva and Jonathan Zavala, two opt-in Plaintiffs, failed to respond at all to the discovery requests. Consequently, Papa John's sought an order compelling these Plaintiffs' responses. *See* D.E. 49. After Papa John's filed its Motion to Compel, however, Silva and Zavala dismissed their claims with prejudice. *See* D.E. 50.

discovery. *See Maddow v. Proctor & Gamble Co., Inc.* 107 F.3d 846 (11th Cir. 1997); *see also U.S. v. Certain Real Property,* 444 F. Supp. 2d 1258 (S.D. Fla. 2006); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 2008 WL 728540, *3 (S.D. Fla. 2008); *Bellosa v. Universal Tile Restoration, Inc.*, 2008 WL 2620735, *4 (S.D. Fla. June 30, 2008). Rather, where a request seeks relevant information, the Eleventh Circuit addresses the private nature of financial information by subjecting it to a confidentiality order. *See id.*

Here, the Court found the information sought by Request for Production 23 to be relevant. Plaintiffs's tips comprised part of their pay, and Plaintiffs were required to report both their compensation directly from Papa John's and their tips on their tax returns. Nor can the W-2 forms substitute for Plaintiffs' tax forms, as the W-2 forms do not include tip information. To the extent that Plaintiffs received the equivalent of $7.35 per hour as a result of any tips they might have earned along with their pay from Papa John's, such a circumstance would be relevant to determining whether Plaintiffs actually received in excess of the minimum wage. Such information may also be relevant for impeachment purposes and affirmative defenses such as set-off, to the extent that such defenses might be available. Because the information sought is relevant, the Court granted Defendant's first Motion to Compel as it sought documents responsive to Request for Production 23. Papa John's must maintain the confidentiality of any documents responsive to this request, however, and use them only for purposes of the pending litigation. Plaintiffs were directed to produce documents responsive to both requests for production by no later than **Wednesday, October 13, 2010, at 5:00 p.m.**

With regard to Defendant's Motion to Compel Plaintiffs' Responses to Defendant's Second Set of Discovery [D.E. 77], this Motion relates to class certification discovery. Papa John's alleges

that on July 13, 2010, Callaway's attorney sent a "lengthy e[-]mail communication to Papa John's delivery driver employees outside of South Florida." D.E. 77 at 2; *see also* D.E. 77-1. The e-mail states, in relevant part,

> I am [a] lawyer with the law firm of Morgan and Morgan. Don't worry, you are not in trouble! Our firm has filed a collective (class) action lawsuit against Papa John's, alleging violations of the federal overtime laws. Specifically, our clients allege two different minimum wage violations. The first violation was prior to July 2009, where certain drivers were paid less than the required minimum wage . . . while performing "in-store" duties and the second occurred post July 2009, as drivers were and are required to "clock-out" at the driver wage of $4.25, but are in fact in the store continuing to perform "in-store" duties, such as cutting onions and peppers, answering phones, making pizzas, etc[.,] and as a result, they should have been paid the "in-store" rate of $7.25. As part of our investigation into these allegations, your name has been identified as a former employee/project coordinator who may have personal knowledge of the allegations in this lawsuit. To be clear, the purpose of this e[-]mail is not to solicit you to join this lawsuit. Rather, we are contacting you to determine whether you have any knowledge of the allegations at issue so that we may conduct our full and complete investigation of the claims and the alleged violations at issue on a statewide/regional level. To the extent you have any knowledge or information on these allegations in any way, we are asking that you contact us to discuss same. You are under no obligation at all to respond to this e[-]mail or contact us even if you have information. To that end, this will be the last e[-]mail/communication you get from me if we do not hear back from you. If, however, this class gets certified as a class, you likely will receive a court notice in the mail asking you if you want to join this case. Again, whether you decide to do so will be entirely up to you. . . .

D.E. 77-1.

Thereafter, Callaway filed his Motion for Order Permitting Supervised Notice of this Action to Potential Opt-in Plaintiffs and Conditional Certification of this Case as a Collective Action [D.E. 64]. In support of this Motion, Callaway filed the Declaration of Kevin Smith [D.E. 65-2]. Kevin

Smith ("Smith") attested that he worked as a delivery driver for a Papa John's store in Texas from approximately December 2008 until September 2009. *See id.* In that capacity, Smith asserted, he often performed up to twelve hours per week of non-delivery driver duties but only received pay at the reduced rate that applies to delivery duties. *Id.* at ¶¶ 11, 12. According to Smith, he and "multiple other[s]" would opt in to the case if the case were certified as a nationwide class action. *Id.* at ¶¶ 15, 16.

Subsequently, Papa John's served two interrogatories and two production requests on Plaintiffs relating to these events. These discovery requests include the following:

> **Interrogatory No. 1:** Identify including e-mail addresses, all recipients of electronic communications that are the same or similar to the [e-mail] communications [at D.E. 77-1], whether sent by you, your agents, representatives, or counsel by e[-]mail, written letter, note or otherwise.
>
> **Interrogatory No. 2:** Describe the source used to obtain contact information for the individuals identified in your answer to Interrogatory No. 1 above.
>
> **Request for Production No. 1:** All written communications (including letters, notes, e-mails or other documents) from you, your agents, representatives, or counsel to any employee of Defendant (past or present), who is not a party to this Action, including, but not limited to, communications that are the same as, or similar to, the e-mail [at D.E. 77-1] . . . seeking information about such employee's knowledge of the allegations in this Action and/or describing how such employee may become a party to this Action.
>
> **Request for Production No. 2:** All written communications (including letters, notes, or e-mails) received by you, your agents, representatives, or counsel from any employee of Defendant (past or present), who is not party to this Action, in response to the communications [at D.E. 77-1], including, but not limited to, communications that are the same as, or similar to, the e-mail [at D.E. 77-1].

D.E. 77 at 6-8.

Invoking the work-product doctrine,[2] Callaway objected but nonetheless noted that he personally had no knowledge regarding D.E. 77-1. In Callaway's Response to Defendant's second Motion to Compel, Callaway explained that his attorneys had developed the list from publicly available sources of information. *See* D.E. 78. During the October 5, 2010, hearing, counsel for Plaintiff provided counsel for Defendant with a copy of the Google search that Plaintiffs' counsel initiated in order to develop the list of individuals to whom Plaintiffs' counsel sent D.E. 77-1. As a result of this development, Defendant's second Motion to Compel became moot with respect to Interrogatory No. 2. Additionally, the Court ruled that the information sought by Interrogatory No. 1 was protected by the work product doctrine. The Court now considers the remaining issues in Papa John's second Motion to Compel.

## **Analysis**

The Court's consideration of Papa John's second Motion to Compel begins with a review of the scope of permissible discovery under Rule 26(b), Fed. R. Civ. P. That rule provides, in relevant part, that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." R. 26(b)(1), Fed. R. Civ. P. The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment,

---

[2]Callaway's objections to the discovery requests originally also included an objection based on the attorney-client privilege. As Callaway abandoned this objection in responding to Defendant's second Motion to Compel, this Order does not consider it.

R. 26, Fed. R. Civ. P. (citations omitted). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[3] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).

Of course, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose an undue burden or be unreasonably cumulative, under the standards described in Rule 26(b)(2)(C). Finally, even if the discovery sought satisfies all of these requirements, an opposing party may not be compelled to respond to it where the opposing party invokes and demonstrates the applicability of an appropriate privilege or protection, except under certain conditions.

Here, however, Plaintiffs implicitly concede relevance, and this Court agrees that the information that Papa John's seeks through its Second Set of Discovery Requests falls well within

---

[3] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

the wide scope of discovery permitted under the Federal Rules of Civil Procedure. Accordingly, the Court directs its attention to Plaintiffs' claims of work-product protection.

The work-product protection traces its recognition in American courts to *Hickman v. Taylor*, 329 U.S. 495 (1947). In *Hickman*, the Supreme Court explained the rationale for the protection:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways – aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

329 U.S. at 510-11.

Rule 26(b)(3), Fed. R. Civ. P., codifies the work-product doctrine originally recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947), as it pertains to "documents and tangible things" sought in discovery. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir. 1994); *see also* Advisory Committee Notes to 1970 Adoption of Rule 26(b)(3), Fed. R. Civ. P. (discussing the Rule's adoption of the *Hickman* work-

product doctrine principles). That rule provides, in relevant part,

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under Rule 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

By the terms of Rule 26(b)(3), the Rule applies only to "documents and tangible things" and only at the discovery stage. Therefore, where a party invokes work-product protection as it involves non-tangible things, such as testimony, or it relates to a different stage of the litigation than discovery, courts must look to *Hickman v. Taylor*. Regardless of the item or information sought or the stage of the litigation at which it is requested, however, federal law governs application of the work-product protection. *See United Coal Companies v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988); *see also Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 658-59 (S.D. Ind. 1991) (citing *Hickman v. Taylor, supra*; *Pete Rinaldi's Fast Foods v. Great Amer. Ins. Cos.*, 123 F.R.D. 198, 201 (M.D.N.C. 1988); Fed. R. Evid. 501); *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. 2001).

The burden to demonstrate the applicability of the work-product doctrine falls on the shoulders of the party claiming the protection. *U.S. v. Moore*, 485 F.2d 1165, 1166 (5th Cir. 1973); *Place St. Michel, Inc. v. Travelers Prop. Cas. Co. of America*, 2007 WL 1059561, *3 (S.D. Fla. Apr. 4, 2007) (citing *Guidry v. Jen Marine LLC*, 2003 WL 22038377, *3 (E.D. La. Aug. 22, 2003)); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990). Plaintiffs have met this burden with regard to information responsive to Interrogatory No. 1 and Production Request No. 1. Indeed, even the most superficial reading of D.E. 77-1 establishes that counsel prepared the communication in question in the course of their investigation into the claims at issue in this case.[4] Any similar communications would likewise qualify for work-product protection for the same reasons. Plaintiffs' counsel's selection of recipients of the communication also enjoys work-product protection, as it reflects counsel's path of investigation. *See BASF Corp. v. Old World Trading Co.*, 1992 WL 22201, *3 (N.D. Ill. Jan. 31, 1992) ("[the defendant] could request the names of individuals with knowledge of the facts, but not the subset of this group actually interviewed by [the plaintiff]").

Because the work-product protection shields the information responsive to Interrogatory No. 1 and Production Request No. 1, the Court next considers whether the work-product protection should be eviscerated with respect to the information responsive to these discovery requests. Consistent with the teachings of *Hickman v. Taylor*, 329 U.S. 495 (1947), and its progeny, Rule

---

[4]Papa John's objects that Plaintiffs' privilege log fails to comply with the Local Rules. *See* D.E. 79 at 3-4 and 3 n.1. While Papa John's correctly notes the usual standard applicable to privilege log entries, Local Rule 26.2(g)(3)(C), S.D. Fla., specifically exempts from its requirements "work product material created after commencement of the action." Docket Entry 77-1, falls into this category, as Plaintiffs initiated this action on December 18, 2009, and the e-mail reflects that it was created on July 13, 2010. Consequently, Plaintiffs were under no obligation under the Local Rules to create privilege log entries for such responsive documents.

26(b)(3) effectively recognizes two categories of "documents and tangible things" subject to the protections of the work-product doctrine: (1) opinion work product, which is defined as "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative," which contain "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation;" *id.*, and (2) fact work-product, which includes all other "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." *Id.*

Under Rule 26(b)(3), Fed. R. Civ. P., opinion work product enjoys "almost absolute immunity" from discovery. *See Williamson v. Moore*, 221 F.3d 1177, 1182-83 (11th Cir. 2000) (citing *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.1994)). While the same level of protection does not apply to fact work product, a court may not order disclosure of fact work product unless the party seeking the discovery demonstrates "substantial need for the materials to prepare its case and [that it] cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Here, Papa John's can make no such showing. With regard to the information responsive to Interrogatory No. 1 and Production Request No. 1, the materials sought comprise opinion work product. The responses to both of these discovery requests would reveal counsel's litigation strategy. Papa John's has failed to establish the type of overriding substantial need for these materials that might justify breaching work-product protection. This is particularly true in view of the fact that Plaintiffs' attorneys have now provided Papa John's with the Google search they performed prior to determining to whom to send their communications.

As for Production Request No. 2, which seeks all written materials that Plaintiffs' counsel

received from the recipients of D.E. 77, the Court finds that the responsive materials do not enjoy work-product protection. Counsel did not prepare such materials; the recipients of D.E. 77 did, or else they collected the documents. Either way, such documents do not reflect counsel's opinions or investigative or litigation strategies. Rather, they provide factual information that does not enjoy the protections of the work-product doctrine. Indeed, "[o]rdinarily, the work product doctrine does not shield from discovery documents created by third parties." *Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.*, 233 F.R.D. 678, 681 (M.D. Fla. 2006) (citing *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, and Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992) (citations omitted)). And the narrow exception to this rule – where a party seeks documents already within its possession for the sole purpose of ascertaining the opposing attorney's strategy – does not accurately describe this production request. *See id.* (citing *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, and Nov. 1, 1991*, 949 F.2d at 1166 (citations omitted)). Thus, the Court finds that the documents that Production Request No. 2 seeks are not protected by the work-product doctrine and must be produced. Accordingly, the Court grants Defendant's second Motion to Compel as it relates to Production Request No. 2. Plaintiffs shall produce all documents responsive to Production Request No. 2 by **5:00 p.m., Monday, October 18, 2010**.

## Conclusion

For the foregoing reasons, Defendant Papa John's USA, Inc.'s Motion to Compel Plaintiffs' Complete Discovery Responses [D.E. 49] is **GRANTED** and Defendant's Motion to Compel Responses to Defendant's Second Set of Discovery [D.E. 77] is **GRANTED IN PART and**

**DENIED IN PART**, consistent with the terms of this Order.

**DONE AND ORDERED** this 12th day of October 2010.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc: Hon. William J. Zloch
    Counsel of Record